IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:13-CV-00757-RN

| | |
|---|---|
| **Lawrence White**, | |
| Plaintiff, | |
| v. | **Memorandum & Order** |
| **Carolyn Colvin**, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Lawrence White instituted this action on October 29, 2013 to challenge the denial of his application for social security income. White claims that Administrative Law Judge Lisa R. Hall erred in her determination by misclassifying his past relevant work, failing to identify work that he could perform at step five and finding the Plaintiff was not fully credible. Both White and Defendant Carolyn Colvin, the Acting Commissioner of Social Security, have filed dispositive motions seeking a resolution in their favor.

After reviewing the parties' arguments, the court has determined that ALJ Hall reached the appropriate decision. ALJ's Hall's decision fully considered all of the evidence, properly analyzed the relevant medical evidence and accurately concluded that Plaintiff's impairments did not preclude all gainful activity. Therefore the undersigned magistrate judge has determined[1] that White's Motion for Summary Judgment will be denied, that Colvin's Motion for Judgment on the Pleadings will be granted, and that the Commissioner's final decision is affirmed.

---

[1] The parties have consented to jurisdiction by a United States Magistrate Judge for all proceedings, including the entry of a final judgment. 28 U.S.C. §636(c).

# I.     Background

White filed an application for disability insurance benefits on April 13, 2011, alleging a disability that began on December 31, 2009. The Social Security Administration denied White's claim initially and upon reconsideration. Administrative Law Judge Hall held a hearing on December 6, 2012 and, in a decision dated April 17, 2013, denied White's application. (Tr. at 17-23.) The ALJ found that White had the following severe impairments: osteoarthritis and hypertension. (*Id*. at 19.) The ALJ also found that his impairments, alone or in combination, did not meet or equal a Listing impairment. (*Id.)* The ALJ determined that White had the RFC to perform a full range of medium work with the following limitation: should avoid concentrated exposure to hazards. (*Id.* at 20.) The ALJ determined that White was capable of performing his past work as an industrial cleaner. (*Id.* at 22.) The ALJ also made alternative findings at Step Five, concluding that, based on his age, education, work experience and RFC, a finding of "not disabled" would be directed by Medical-Vocational Guideline Rules 203.11 and 203.03.  (*Id.* at 23.)  Thus, the ALJ found that White was not disabled. (*Id.*)

After unsuccessfully seeking review by the Appeals Council, White commenced this action and filed a complaint pursuant to 42 U.S.C. § 405(g) on October 29, 2013. [D.E. 2].

## II. STANDARD OF REVIEW

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th

Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chafer*, 99 F.3d 635, 638 (4th Cir. 1996).

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At Step One, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At Step Two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At Step Three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment then, at Step Four, the claimant's residual functional capacity ("RFC") is assessed to determine whether plaintiff can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

## III.    ANALYSIS

### A.    *Past relevant work*

At step four of the sequential analysis, the ALJ determines whether the plaintiff retains the RFC to meet the mental and physical demands of any past relevant work ("PRW"). 20 C.F.R. §§ 404.1560(b), 416.960(b) (2011). The regulations allow the ALJ to "use the services of

vocational experts [VEs] or vocational specialists, or other resources, such as the [DOT] and its companion volumes and supplements, published by the Department of Labor" when making this determination. 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). A plaintiff will be found not disabled if she can meet the demands of the past relevant work as it was actually performed by the plaintiff or as it is generally performed in the national economy. *Id.*; SSR 82–62, 1982 WL 31386, at *3.[2] A VE may offer relevant evidence regarding the demands of the past work as it was actually performed, and both the ALJ and VE may rely on the plaintiff's testimony and other documentation describing the prior jobs. *Id.*; *see also Pass v. Chater*, 65 F.3d at 1207; *Crawley v. Comm'r*, No. SAG–11–2427, 2013 WL 93202, at *3 (D. Md. Jan. 7, 2013).

White first argues that the ALJ erred in classifying his past relevant work as industrial cleaner (DOT: 381.687-018). At step four of the sequential analysis, the plaintiff has the burden of showing that she can no longer perform her past relevant work. 20 C.F.R. § 416.920(e); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1993) (through step four of the SEP, plaintiff carries the burden of production and proof). Nevertheless, "the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001) (citing SSR 82–62; 20 C.F.R. §§ 416.971, 416.974, and 416.965.) "[I]n finding that an individual has the capacity to perform a past relevant job, the [ALJ's] decision must include a specific 'finding of fact as to the physical and mental demands of the past job'" as well as

---

[2] SSR 82–62, in relevant part, provides:

> [D]etermination of the claimant's ability to do PRW requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy.

1982 WL 31386, *3

analysis of whether that individual's RFC would impact her ability to perform such a job. *Alderman v. Barnhart*, 297 F. Supp. 2d 876, 879 (W.D. Va. 2003) (citing SSR 82–62).

Step Four also requires a claimant to show "an inability to return to his or her previous work (i.e., occupation), and not simply to his or her specific prior job." *DeLoatche v. Heckler*, 715 F.2d 148, 151 (4th Cir. 1983). In determining whether a claimant can perform his or her past relevant work, the ALJ "may rely on the general job categories of the Dictionary as presumptively applicable to a claimant's prior work. The same label, however, may be used in a variety of ways." *DeLoatche*, 715 F.2d at 151. Further, a "claimant may overcome the presumption that the [Commissioner]'s generalization applies by demonstrating that [his] duties were not those envisaged by the framers of the [Commissioner]'s category." *Id.*

Here, White's past work could reasonably correspond to the DOT industrial cleaner position. The job descriptions of his past work at Bojangles and the DOT description of the industrial cleaner position have several similar job duties. The chart below compares White's past relevant work experience with DOT's industrial cleaner classification.

| White's Past Relevant Work | DOT Industrial Cleaner |
|---|---|
| Keeps the parking lot clean (Tr. 33) | Picks up refuse from grounds (DOT: 381.687-018) |
| Stocks and unloads boxes (Tr. 33–34) | Collects trash and waste (DOT: 381.687-018) |
| Takes the trash out of the restaurant (Tr. 33) | Arranges boxes and materials in a neat and orderly manner (DOT: 381.687-018) |
| Cleans the dumpster pad and the drive-thru pad using a power washer or a deck brush (Tr. 34) | Cleans floors, using water hose (DOT: 381.687-018) |

The DOT classification need not mirror a claimant's past relevant work but only contain some comparable duties. *DeLoatche,* 715 F.2d at 151 ("the Secretary may rely on the general job categories of the [DOT] as presumptively applicable to a claimant's prior work."). Thus, the job descriptions are sufficiently similar to permit his work at Bojangles to be characterized as

industrial cleaner. Additionally, White has not identified an alternate DOT listing that more closely resembles his previous work.

Even if his past relevant work were misclassified as an industrial cleaner, any error would be harmless inasmuch as the ALJ determined that, given his RFC for medium work, White could perform his past work at Bojangles as he actually performed that job. (Tr. at 22)  As there is no evidence to establish that White is unable to perform the functional demands and job duties of the industrial cleaner job as it is generally performed, or of his past work as it was actually performed, White's argument that his past relevant work was mischaracterized is unpersuasive.

White further contends that the lack of testimony by a vocational expert warrants remand. Specifically, he asserts that the Notice of Hearing stated that a VE would testify and included the resume of one VE. At the hearing, however, no such testimony was offered.

However, the testimony of a VE was not required inasmuch as the ALJ determined, at Step Four, that White was capable of performing his past relevant work, both as it is generally performed and as it was actually performed. (Tr. at 22) In deciding a case at Step Four, an ALJ need not adduce VE testimony, but may rely on information about the past relevant work that is provided by the claimant. *See* 20 C.F.R. § 404.1560; *Parker v. Comm'r*, No. SAG-12-1223, 2013 WL 1338418, at *1 (D. Md. Mar. 29, 2013). At the hearing, the ALJ specifically asked White questions about the demands of his job. For example, the ALJ asked what type of work he did and how many hours he spent on various job duties. (Tr. at 33-35.) White also completed forms detailing the type of work he performed, how much lifting was required, and what his duties included. (Tr. at 201-02.) The ALJ made a finding of fact as to White's RFC, made findings of fact as to the physical and mental demands of his past relevant work, based on descriptions from the DOT and other evidence, and made a finding of fact that his RFC would permit a return to

his past relevant work. (Tr. at 20, 22.) Therefore, the the ALJ complied with requirements of SSR 82–62. White assignment of error at step four lacks merit and is rejected.

    *B.*    *Step Five*

White also contends that, for the Commissioner to carry her burden at Step Five, VE testimony was required to identify jobs that he was capable of performing. At Step Five, the ALJ concluded that a finding of "not disabled" was directed by Medical-Vocational Rules 203.11 and 203.03. Although White had a limitation to avoid concentrated exposure to hazards, the ALJ determined that this limitation did not significantly erode the occupational job base at any exertional level. (Tr. at 23.)

At Step Five, the Commissioner must prove in one of two ways that a claimant remains able to perform other jobs available in the community. Where the claimant has purely exertional impairments, the ALJ may apply the Social Security Administration's Medical-Vocational Guidelines (the "Grids"), contained in 20 C.F.R. Chapter III, Part 404, Subpart P, Appendix 2, to establish the claimant's vocational ability. *See McLain v. Schweiker*, 715 F.2d 866, 870 n. 1 (4th Cir. 1983). If, however, the claimant suffers from nonexertional impairments or a combination of exertional and nonexertional limitations, the ALJ may not rely upon the Grids and must consider vocational expert testimony. *Id. See also Grant v. Schwieker*, 699 F.2d 189, 191–92 (4th Cir. 1983) (the Grids are not conclusive when a claimant's impairment is, at least in part, nonexertional because the Grids do not account for nonexertional limitations).

However, "not every nonexertional limitation or malady rises to the level of a nonexertional impairment, so as to preclude reliance on the Grids." *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989). "The proper inquiry . . . is whether the nonexertional condition affects an individual's residual functional capacity to perform work of which he is exertionally capable."

*Id.* Here, the ALJ noted that White's nonexertional limitation to avoid concentrated exposure to hazards had little impact on any occupational base. (Tr. 23) Where a claimant's "nonexertional limitations have a minimal effect on his exertional occupational base, then a finding directed by the Grids is sufficient, and testimony by a VE is unnecessary." *Boland v. Astrue*, Case No. 3:08–CV–798, 2009 WL 2431536, at *1 (E.D. Va. Aug. 7, 2009). *See also Hammond v. Heckler*, 765 F.2d 424, 425–26 (4th Cir. 1985) (noting that, in instances where a claimant can perform the full range of work within one of the exertional categories, the Fourth Circuit has held that the Grids adequately encompass the plaintiff's ability to perform basic work activities). Thus, the ALJ was entitled to rely on the result prescribed by the Grids to find the White "not disabled" without hearing testimony from a VE.

As the Grids directed a finding that White was not disabled, the ALJ was not required to secure testimony from a VE regarding other work that White could perform. Indeed, the Grids represent "fact based generalizations about the availability of jobs for persons of varying ages, educational backgrounds, and prior work experience, with differing RFCs." *Cogar v. Colvin*, Case No. 3:13-CV-380, 2014 WL 1713795, at *5 (W.D.N.C. Apr. 30, 2014) (citing *Gory v. Schweiker*, 712 F.2d 929, 930 n.2 (4th Cir. 1983)); *Grant*, 699 F.2d at 191–92 (4th Cir. 1983) (noting that the Grids "take administrative notice of the availability of job types in the national economy for persons having certain characteristics, namely age, education, previous work experience, and residual functional capacity."). Accordingly, White's argument on this issue lacks merit.

C.    *Other impairments*

White asserts that his application listed several conditions that the ALJ failed to consider. White maintains that several of these conditions are static and degenerative, with little treatment

options available. He contends that remand is warranted because the ALJ failed to consider these additional limitations or to make a finding as to their severity, thus precluding meaningful review of his decision. However, a review of White's application indicates no specific condition was identified. (Tr. 166–69) Nor does he identify in his brief in support of his present Motion for Summary Judgment which conditions the ALJ failed to consider. Mindful that White has the burden of proof at Steps One through Four of the sequential evaluation, and no evidence supporting his position on this issue being put forth, White's argument lacks merit and is denied.[3]

### D. *Listing level impairment analysis*

White next argues that the ALJ erred at Step Three by failing to adequately explain her reasons for finding that White's impairments did not meet or equal a Listing impairment. He contends that the evidence supports a finding that he meets or equals Listing 12.05 as well as Listing 11.04.

The listings consist of impairments, organized by major body systems, that are deemed sufficiently severe to prevent a person from doing not only any substantial gainful activity, but

---

[3] Moreover, in evaluating the combined effect of impairments, an ALJ's discussion and analysis will be found adequate where a reading of the decision as a whole makes clear that the ALJ considered the combination of impairments. *See Brown v. Astrue*, Case No. 0:10-CV-01584, 2012 WL 3716792 (D.S.C. Aug. 28, 2012) (holding the decision as a whole makes clear that the Commissioner considered the combined effect of a claimant's impairments). Throughout the decision, the ALJ referenced Plaintiff's symptoms, conditions, testimony and the medical evidence. She specifically noted that she carefully considered the entire record (Tr. at 19) and that she considered all symptoms. (*Id.*). The ALJ also found that Plaintiff did not have an impairment or combination of impairments that met or equaled a Listing impairments. (Tr. at 18). This is sufficient to demonstrate that the ALJ considered the combined effects of Plaintiff's impairments. *See Mazyck v. Astrue*, Case No. 8:10–2780, 2012 WL 315648, at *2–3 (D.S.C. Feb. 1, 2012) (bare conclusion that the claimant did not have an impairment or combination of impairments that meet the listing requirement is sufficient to show that the ALJ adequately considered the claimant's impairments in combination).

any gainful activity at all. 20 C.F.R. §§ 404.1525(a), 416.925(a). Therefore, if a claimant's impairments meet or equal a listing, the claimant is disabled. *Id.* §§ 404.1520(d), 416.920(d). An impairment meets a listing if it satisfies all the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see* SSR 83–19, 1983 WL 31248, at *23 (1983). The claimant must prove that his impairment meets a listing. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

Nonetheless, even if an impairment does not meet the listing criteria, it can still satisfy the listing if the impairment medically equals the criteria. 20 C.F.R. §§ 404.1525(e)(5), 416.925(c)(5). To establish such medical equivalence, a claimant must present medical findings equal in severity to all the criteria for that listing. *Sullivan*, 493 U.S. at 531; *see* 20 C.F.R. §§ 404.1526(a), 416.926(a) (providing that medical findings must be at least equal in severity and duration to the listed criteria). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531 (citation omitted).

An ALJ generally is required not only to identify the relevant Listing, but also to compare the claimant's symptoms to the Listing's criteria. *Fraley v. Astrue*, Case No. 5:07-CV-141, 2009 WL 577261, at *3 (N.D. W. Va. Mar. 5, 2009) ("When determining whether a claimant's specific injury meets or equals a listed impairment, an ALJ must explain his or her rationale. This requires an ALJ to compare the plaintiff's actual symptoms to the requirements of any relevant listed impairments in more than a 'summary way.'" (citations omitted)); *Beckman v. Apfel*, Case No. WMN–99–3696, 2000 WL 1916316, at *9 (D. Md. Dec. 15, 2000).

However, in some cases, the point-by-point analysis is not necessary. "Meaningful review may be possible even absent the explicit step-by-step analysis . . . where the ALJ

discusses in detail the evidence presented and adequately explains his consideration thereof."

*Johnson v. Astrue*, No. 5:08–CV–515–FL, 2009 WL 3648551, at *2 (E.D.N.C. Nov. 3, 2009).

Thus, when other portions of an ALJ's decision make clear the Listings the ALJ considered and

the basis upon which the ALJ found that the claimant did not meet or equal them, the step-by-

step analysis is not essential to judicial review. *See Smith v. Astrue*, 5:10–CV–399–FL, 2012 WL

928644, at *3 (E.D.N.C. Mar. 19, 2012) (unpublished).

Listing 12.05 (intellectual disability and autism) of the Commissioner's Listing of

Impairments provides in relevant part that:

> Intellectual disability refers to a significantly sub-average general intellectual
> functioning with deficits in adaptive functioning initially manifested during the
> developmental period (before age 22) ... the required level of severity for this
> disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A. Mental incapacity evidenced by dependence upon others for personal needs
> (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such
> that the use of standardized measures of intellectual functioning is precluded;
>
> OR
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or
> other mental impairment imposing an additional and significant work-related
> limitation of function;
>
> OR
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at
> least two of the following:
>
>> 1. Marked restriction of activities of daily living; or
>>
>> 2. Marked difficulties in maintaining social functioning; or
>>
>> 3. Marked difficulties in maintaining concentration, persistence, or pace;
>> or

4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404 Subpart P, App. 1, 12.05.

As noted above, White bears the burden of proof at this step of the sequential evaluation process. The record contains no evidence that White is dependent upon others for his personal needs, required by Subsection (A), nor has White identified any I.Q. tests demonstrating he meets subsections (B), (C) or (D). Accordingly, White has failed to carry his burden of establishing that his impairments meet or equal Listing 12.05.

Listing 11.04 (Central nervous system vascular accident) requires one of the following more than 3 months post-vascular accident:

A. Sensory or motor aphasia resulting in ineffective speech or communication; or

B. Significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station.

20 CFR Pt. 404, Subpt. P, App. 1, 11.04. Although he avers that he presented evidence satisfying the requirements of Listing 11.04, White has not identified evidence of either sensory or motor aphasia or significant and persistent disorganization of motor function in two extremities, nor does a review of the record disclose such evidence. Accordingly, a finding that he meets or equal Listing 11.04 cannot be made.

An ALJ is only required to identify and discuss the arguably relevant Listings. *See Kelly v. Astrue*, Case No. 5:08-CV-289-FL, 2009 WL 1346241 *5 (E.D.N.C. May 12, 2009) ("The ALJ is only required to explicitly identify and discuss relevant listings of impairments where there is ample evidence in the record to support a determination that an impairment meets or medically equals a listing.") (internal quotations omitted). While remand may be warranted where the ALJ "provided no explanation other than writing that he 'considered, in particular,'" a

variety of listings," *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013), where there is no probative evidence suggesting that a plaintiff meets or equals a particular Listing, an ALJ is not required to engage in a full explanation of such Listings. *Mills v. Colvin*, Case No. 5:13-cv-432-FL, 2014 WL 4055818, at * 5 (E.D.N.C. Aug. 14, 2014). Therefore, while the ALJ provided only a brief explanation at Step Three, substantial evidence supports the ALJ's determination that White's condition did not meet or equal the requirements of any Listing of Impairments. Consequently, White's argument on this issue is rejected.

> E.    *Credibility*

In *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996), the Fourth Circuit addressed the issue of credibility and outlined a two part test for evaluation a claimant's statements about symptoms in a social security case. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" *Craig*, 76 F.3d at 594 (quoting 20 C.F.R. § 404.1529(b)). Upon satisfaction of part one by the claimant, the analysis proceeds to part two, which requires an assessment of the intensity and persistence of the claimant's symptoms, and the extent to which they affect his or her ability to work. *Craig*, 76 F.3d at 595.

The Step Two inquiry considers "all available evidence," including objective medical evidence (i.e., medical signs and laboratory findings), medical history, a claimant's daily activities, the location, duration, frequency and intensity of symptoms, precipitating and aggravating factors, type, dosage, effectiveness and adverse side effects of any pain medication, treatment, other than medication, for relief of pain or other symptoms and functional restrictions. *Id.*; *see also* 20 C.F.R. § 404.1529(c)(3); SSR 96–7p, 1996 WL 374186, at *3. An ALJ may not

discredit a claimant solely because his subjective complaints are not substantiated by objective medical evidence. *See Craig*, 76 F.3d at 595–96. However, neither is the ALJ obligated to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." SSR 96–7p, 1996 WL 374186, at *3.

Here, the ALJ's credibility determination is supported by substantial evidence. First, the ALJ observed that White worked approximately 20 hours per week at Bojangles. (Tr. 32) White contends that this work does not rise to the level of substantial gainful activity ("SGA") and cannot, therefore be considered. However, even if prior part-time work does not rise to the level of substantial gainful activity, an ALJ may still consider whether the work performed demonstrates that a claimant is able to do more work than he or she is alleging. 20 C.F.R. § 404.1571(a); *see also Blair v. Astrue*, No. 5:10–cv–112, 2012 WL 625001, at *4 (W.D. Va. Feb. 24, 2012) (collecting cases explicitly condoning ALJ's consideration of prior non-SGA work in credibility determinations regarding what a claimant reports he or she can do). The ALJ's consideration of White's part-time work as was, therefore, not in error and supports a finding that he was not as limited as he alleged.

The ALJ also concluded that White's allegations were not fully creditable based on the limited treatment he sought and received for his conditions. The records demonstrate that in the 18 months from his alleged onset date, White had only one medical appointment, which noted no complaints and generally normal findings. (Tr. 20; 257–58) Additionally, he missed several appointments and had an 8 month gap in follow-up care. *Id.* at 21, 331. It is well-settled that "the individual's statements may be less credible if the level or frequency of treatment is inconsistent

with the level of complaints." S.S.R. 96-7p, 1996 WL 374186, at *7. Such evidence is properly considered in making the credibility determination.

Moreover, when medical care was received, treatment notes observed minimally decreased range of motion in his shoulders, full range of motion in his knees and wrists, full motor strength and normal sensation. (Tr. 20–21; 302) These generally normal or minimally deficient findings suggest functioning at a greater level than White avers. Consequently, there is substantial evidence upon which the ALJ could conclude that White's subjective statements as to the intensity, persistence and limiting effects of his conditions were not fully creditable.

White also argues that his self-reported history and description of his conditions is an essential diagnostic tool that must be considered in the disability determination process. The ALJ discounted many of his statements, finding that they were contradicted by other evidence, including his part-time work at Bojangles, activities of daily living and the medical evidence of record, which demonstrated largely normal findings, lack of frequent medical care and conservative treatment regimens. (Tr. 20–22) As noted above, the consideration of his work history was not improper. Moreover, under 20 C.F.R. §416.929 (c)(3), factors relevant to the evaluation of a claimant's symptoms include daily activities and treatment received. Consequently, the ALJ properly considered all the evidence in concluding that his allegations of chronic pain were not fully credible.

"[B]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively*, 739 F.2d at 989. An ALJ's credibility determination therefore "should be accepted by the reviewing court absent exceptional circumstances." *Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997) (quoting *NLRB v. Air Products & Chemicals, Inc.*, 717 F.2d

141, 145 (4th Cir. 1983)); *see also Meadows v. Astrue*, No. 5:11–CV–63, 2012 WL 3542536, at

*9 (W.D. Va. Aug. 15, 2012) (upholding ALJ's credibility determinations where they were

neither unreasonable nor contradicted by other findings). As there is substantial evidence to

support the ALJ's credibility determination, which is entitled to great deference, White's

argument on this issue lacks merit.

### F.    *Evidence from treating source*

White next asserts that he submitted a summary of evidence, dated November 12, 2012

which referenced his treating physician, Dr. Brown. He contends that the ALJ erred in failing to

make further inquiry as to Dr. Brown's opinion and to order a consultative examination under 20

C.F.R. § 416.912. He also contends that the opinion of consultative examiner, Dr. Clark, is

deficient because Dr. Clark did not have part of Dr. Brown's record to review.

Dr. Brown's opinion is a form sent by White's counsel to Dr. Brown, which was filled

out on September 27, 2011 and, apparently returned to White's counsel. [D.E. 31-1]. Dr. Brown

appears to not have retained a copy, because when Dr. Brown produced his file to the SSA, this

form was not included. As Defendant points out, however, White's counsel should have been

aware that this form executed by Dr. Brown was not contained in the record. On April 3, 2012,

SSA sent a letter to White's counsel explaining that the proposed exhibits were ready for review

and to advise the SSA if the evidence was not up-to-date or complete. (Tr. 224–25) The record

does not reveal that counsel informed the SSA that Dr. Brown's opinion from September 22,

2011 had been omitted. Additionally, following the December 6, 2012 hearing, White's counsel

was asked if she had reviewed the evidence and if she had any objection. (Tr. at 29.) Counsel

responded that she had reviewed the evidence and that she had no objection. (*Id.*)

"Although the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, . . . [the ALJ] is not required to function as the claimant's substitute counsel[.]" *Bell v. Chater*, No. 95–1089, 1995 WL 347142, at \*4 (4th Cir. Jun. 9, 1995) (citing *Clark v. Shalala*, 28 F.3d 828, 830–831 (8th Cir. 1994)) (internal citations and quotations omitted). Moreover, the ALJ's duty to develop the record "does not permit a claimant, through counsel, to rest on the record — indeed, to exhort the ALJ that the case is ready for decision — and later fault the ALJ for not performing a more exhaustive investigation." *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008); *see also* 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. § 404.1512(d). Given that White's counsel had a copy of the form executed by Dr. Brown, yet failed to alert the SSA that it had been omitted from the record, White's argument that this omission was an error of the part of the ALJ is disingenuous. *See Gatling v. Astrue*, Case No. 2:211-cv-0021-FL, 2012 WL 4359435, at \*7 (E.D.N.C. June 28, 2012) (rejecting argument that the ALJ erred in failing to develop the record where, at the hearing before the ALJ, claimant's counsel did not indicate or suggest to the ALJ that any medical records from one of the physicians were missing from the administrative record, nor did counsel ask for the ALJ's assistance in obtaining any additional medical records); *Jones v. Astrue*, Case No. 5:11-CV-206-FL, 2012 WL 3580482, at \*8 (E.D.N.C. Apr. 19, 2012) (rejecting argument that sought to fault the ALJ for a duty that should have been performed by claimant's counsel, noting that claimant's counsel had an opportunity at the hearing to elicit further testimony but failed to conduct an exchange with his client.). Furthermore, Dr. Brown's form opinion is arguably entitled to less weight given the lack of explanation associated with such form opinions. *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.").

Nor was the ALJ required to order a consultative examination. Although an ALJ has a duty to develop the record, under 20 C.F.R. § 4016.912 (f), a consultative examination will only be ordered when the information sought "is not readily available from the records of [the claimant's] medical treatment source, or [the Commissioner is] unable to seek clarification from [the claimant's] medical source." An ALJ has discretion in deciding whether to order a consultative examination. *See* 20 C.F.R. § 404.1519a; *Bishop v. Barnhart*, 78 F. App'x 265, 268 (4th Cir. 2003); *Sims v. Apfel*, 224 F.3d 380, 381 (5th Cir. 2000). In the present case, a consultative examination was not required because, as discussed herein, there was substantial evidence in the record for the ALJ to conclude that White was not disabled. *See Brown v. Astrue*, 2012 WL 2953213 (W.D.N.Y. July 19, 2012) ("[C]onsultative examination is unnecessary if the record contains sufficient information on which to base the decision."); *Cosom v. Astrue*, No. 11-CV-294, 2012 WL 1898921, at * 7 (W.D.N.C. Feb. 23. 2012) (finding that "there was no need to arrange for a consultative examination because the ALJ had all the information he needed to reach a decision.").

Additionally, to the extent White's takes issue with Dr. Clark's May, 2011 assessment, his argument is unfounded. The records prior to Dr. Clark's consultative examination were minimal, as White had just one medical examination in the previous 18 months, a visit which noted that he had no complaints and from which the impressions were stable hypertension, B-12 deficiency and nicotine abuse. White makes no argument what effect these records would have on Dr. Clark's assessment. Moreover, Dr. Clark found that White had full range of motion in his hands and wrists, full sensation in his upper extremities and full strength in all muscle groups of the upper extremities. He noted that White was able to turn knobs and grasp objects. Based on this examination, Dr. Clark concluded that White had no severe musculoskeletal limitation, a

finding which the ALJ gave significant weight because it was consistent with the other evidence of record. Accordingly, there is no error in the evaluation of the medical source opinion. Inasmuch as White has failed to carry his burden of demonstrating how the outcome would be different had Dr. Brown's September 22, 2011 opinion been included for review, *see Cogar*, 2014 WL 1713795, at *4 (claimant must show that additional evidence would produce a different result); *Dover v. Astrue*, Case No. 1:11CV120, 2012 WL 1416410, *5 (W.D.N.C. Mar. 19, 2012) ("even assuming that the ALJ did err, such error by the ALJ was harmless because remand would not lead to a different result."), his argument on this issue is rejected.

      *G.     Consideration of nonexertional impairments*

White also contends that the ALJ failed to properly consider all of his impairments, including his allegations of chronic pain. In support of his position, White points out that he testified to experiencing pain in multiple places and that he needs help from coworkers to perform his work duties. He further cites the opinions of Dr. Brown, who opined that he could stand for two hours, could lift or carry 50-80 pounds for one-third of the day, but was otherwise limited to lifting or carrying 10 pounds, and Kay Suh, a nurse practitioner, who opined that White was limited to lifting 20 pounds. These opinions were first submitted to this court and to the Appeals Council, respectively.

SSR 97-6p provides, in pertinent part:

In determining the credibility of the individuals statements the adjudicator must consider the entire case record, including the objective medical evidence, the individual's statements about symptoms, statements and other information provided by treating or examining physicians or psychologists or other persons about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.

1996 WL 374186, at *1–2. As noted above, the ALJ discounted White's subjective statements as to the limiting effects of his impairments based on his activities of daily living, including his part-time job, and the medical evidence, which demonstrated generally normal examination findings and limited treatment.

Neither Dr. Brown's nor Ms. Suh's opinions form a basis warranting remand. Sentence six of 42 U.S.C. § 405(g) ("sentence six") provides for remand when evidence is submitted for the first time at the district court level. It permits remand "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *see Stanley v. Colvin*, Case No. 7:12–CV–134–FL, 2013 WL 2447850, at *7 (E.D.N.C. Jun. 5, 2013). "Evidence is deemed new if it is not duplicative or cumulative of evidence already in the record." *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991); *Stanley*, 2013 WL 2447850, at *7. Evidence is material if there is a reasonable possibility that it would have changed the outcome. *Wilkins*, 953 F.2d at 96. There must be also be good cause for failing to submit the evidence earlier. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985). The burden of showing that the requirements of sentence six are met rests with the claimant. *See Fagg v. Chater*, No. 95–2097, 1997 WL 39146, at *2 (4th Cir. Feb. 3, 1997); *Keith v. Astrue*, No. 4:11CV0037, 2012 WL 2425658, at *2 (W.D. Va. Jun. 22, 2012) ("The burden of demonstrating that all of the Sentence Six requirements have been met rests with the plaintiff"), *rep. and recommendation adopted by* 2012 WL 4458649 (Aug. 9, 2012).

Here, given the substantial evidence supporting the ALJ's determination, it is not reasonable that Dr. Brown's opinion would likely alter the outcome of the disability determination. Dr. Brown's opinion is contradicted by White's testimony regarding his part-time

job, where he walked/stood and lifted/carried at exertional levels beyond Dr. Brown's limitations. (Tr. 33–34; 202) Additionally, evidence from the state agency physicians, who concluded that White was capable of medium work, does not support Dr. Brown's opinion. (Tr. 22; 66–67) Nor has White shown good cause for failing to submit Dr. Brown's September 22, 2011 opinion earlier in the proceedings. Thus, White has failed to meet the criteria warranting remand under sentence six.

With respect to Ms. Suh's opinion, regulations permit claimants to submit additional evidence, not before the ALJ, when requesting review by the Appeals Council. *See* 20 C.F.R. §§ 404.968, 404.970(b); *Meyer v. Astrue*, 662 F.3d 700 (4th Cir. 2011). The Appeals Council will consider all the evidence in the administrative law judge hearing record as well as any new and material evidence submitted to it which relates to the period on or before the date of the administrative law judge hearing decision. 20 C.F.R. §§ 404.976(b)(1), 416.1476(b)(1); *Wilkins*, 953 F.2d at 95–96. The Appeals Council does not need to explain its reason for denying review of an ALJ's decision. *Meyer*, 662 F.3d at 702.

Defendant correctly notes that as Ms. Suh's opinion is not material inasmuch as it would not change the outcome of the ALJ's decision. As a nurse practitioner, Mr. Suh is an "other medical source" whose opinion is not entitled to controlling weight. Moreover, like Dr. Brown's opinion, Ms. Suh's findings are contradicted by the other evidence of record, including White's work activity and the medical evidence of record. (Tr. 22; 33–34; 66–67; 202) Further, like Dr. Brown's form-opinion, Ms. Suh's opinion is also provided in a fillable form, which is weak evidence of his limitations. *Mason v. Shalala*, 994 F.2d at 1065.

Having failed to demonstrate remand for consideration of the additional evidence is warranted, White's argument on this issue is rejected.

### H. Compliance

Finally, White argues that the ALJ erred in discrediting in finding his limited medical treatment suggestive that his condition was not disabling. White maintains that by failing to develop evidence as to whether White's non-compliance was justifiable, the ALJ failed to comply with SSR 82–59 and committed reversible error. However, SSR 82-59 applies only when an ALJ has determined that an individual's impairments preclude him or her from engaging in substantial gainful activity, *i.e.*, an individual who would otherwise be found disabled under the Act. *Lozada v. Barnhart*, 331 F. Supp. 2d 325 (E.D. Pa. 2004). Here, the ALJ only discussed White's limited medical treatment in assessing his credibility and his limited treatment was but one factor in making the credibility determination. Moreover, such an inquiry is proper. *See* SSR 96–7p, 1996 WL 374186, at *3. Accordingly, White's argument lacks merit.

## IV. CONCLUSION

For the aforementioned reasons, the White's Motion for Summary Judgment [D.E. 30] is denied, that Defendant's Motion for Judgment on the Pleadings [D.E. 32] is granted, and that the decision of the Commissioner is affirmed.

Dated: March 27, 2015.

_____
ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE